# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT HARPER-BEY, | Civil No. 12cv0364-BTM (PCL) |
| Petitioner, | **ORDER:** |
| vs. | **(1) ADOPTING IN PART, ADOPTING IN PART AS MODIFIED, AND DECLINING TO ADOPT IN PART THE FINDINGS AND CONCLUSIONS OF UNITED STATES MAGISTRATE JUDGE;** |
| DR. JEFFREY BEARD, Secretary, | **(2) DENYING PETITION FOR A WRIT OF HABEAS CORPUS; and** |
| Respondent.[1] | **(3) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY** |

This matter comes before the Court on a Petition for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 by Vincent Harper-Bey, a California prisoner proceeding pro se and in forma pauperis. Petitioner was convicted in the San Diego County Superior Court of eight counts of second degree robbery following a jury trial, for which he was sentenced to 27 years in state prison, a sentence enhanced by a prior felony conviction. United States Magistrate Judge Peter C. Lewis has issued a Report and Recommendation ("R&R") which recommends

---

[1] The Clerk of Court is directed to amend the docket to reflect that Dr. Jeffrey Beard, the Secretary of the California Department of Corrections and Rehabilitation, has been substituted as Respondent in place of his predecessor and former Respondent Matthew Cate. See Fed. R. Civ. P. 25(d) (requiring automatic substitution as a party the successor of a public office).

the Petition be denied. Petitioner has filed Objections to the R&R, to which Respondent has filed a Reply.

The Court has reviewed the R&R, the Objections thereto and the Reply, pursuant to 28 U.S.C. § 636(b)(1), which provides that: "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

**1.  Claim 1**

Petitioner alleges in Claim 1 that: (1) his right to due process under the Fifth and Fourteenth Amendments was violated by the arraignment judge's refusal to accept his guilty plea, by the entry of a not guilty plea on his behalf against his wishes, and by the failure of the prosecutor to obtain leave of court to amend the felony complaint; and (2) his Sixth Amendment right to counsel was violated by his unappointed arraignment counsel's entry of a not guilty plea on Petitioner's behalf, and by arraignment counsel's refusal to honor Petitioner's request to enter a guilty plea. (Mem. P&A Supp. Pet. [Doc. No. 19] at 8-21.)

At Petitioner's arraignment, prior to the appointment of counsel, the following exchange took place between Petitioner, the arraignment judge, a deputy district attorney, and a deputy public defender who had met with Petitioner but had not been appointed to represent him:

| | |
|---|---|
| Ms. Lam: | Linh Lam appearing on behalf of the People. |
| Mr. Rodriguez: | Mr. Harper is present in custody, your Honor. He has been advised of his constitutional rights, and his true name appears on the complaint. Waive further reading . . . |
| The Defendant: | May I – |
| Mr. Rodriguez: | Your Honor – Don't speak right now. [¶] Your Honor, this gentleman and I had a discussion in back. He's indicated his desire to go ahead and enter a plea at this time. I advised him that that would not be wise. I encouraged him to take a not-guilty plea, and that is what I'm going to do on his behalf, enter a plea of not guilty. He would like it to be known that he wishes to plead guilty today although I advised him against it, and I guess I'll argue the issue of bail when the court makes a decision as to what to do. |
| The Court: | Well, I'm not going to accept a guilty plea before he's talked to an attorney; that's not my function in this court, so I'm not going to do it. So enter a not-guilty plea on his behalf. |

| | | |
|---|---|---|
| 1 | Mr. Rodriguez: | That's what I would be requesting, your Honor, yes. |
| 2 | The Court: | All right. I'll enter a not-guilty plea and appoint counsel for you, sir, and file the advisal of rights form. [¶] What happened here? |
| 3 4 5 | Ms. Lam: | Your Honor, in this case the defendant robbed five banks and a 99 cent store over the course of eight months. He possibly used a firearm, but we don't have the videos yet so we can't confirm that. He has at least two uncharged PC211 priors. We're asking for $500,000. |
| 6 | The Court: | Are you covering this for MVP? |
| 7 | Ms. Lam: | Yes, your Honor. |
| 8 9 | Mr. Rodriguez: | Ask the court to keep bail as set as charged at this time. He's 44 years old. I understand that he has some federal probation issues but no other holds, and I see that in looking at his criminal history, his last conviction was from 1998. So I'll ask the court to keep bail as set. |
| 10 | The Court: | $300,000. [¶] Do you waive your bail review, sir? |
| 11 | The Defendant: | Yes. May I address the court? |
| 12 13 | Mr. Rodriguez: | One moment if I may interrupt your Honor. Excuse me. If I may. I'm sorry. I just need one minute, your Honor. [¶] Thank you. No questions. [¶] Is that correct, no further questions, sir? |
| 14 | The Defendant: | Yes. |
| 15 | Mr. Rodriguez: | He said no for the record. |
| 16 17 | The Court: | All right. I'm going to give you a readiness. In light of the comments that were made, maybe there's some sort of an agreement that can be worked out early on in this case. [¶] So set it for a readiness and a prelim. |

(Lodgment No. 4, Reporter's Tr., Apr. 4, 2007, at 1-3.)

Thus, the arraignment judge refused to accept a guilty plea prior to appointing Petitioner counsel, and entered a not guilty plea on his behalf, either sua sponte or in response to unappointed counsel's request. Although Petitioner was at first prevented from speaking on the record by the deputy public defender who had not been appointed to represent him, Petitioner eventually indicated that he had no further questions after the not guilty plea had been entered. He was arraigned on an amended complaint about two weeks later, which added two additional counts of robbery and the prior felony conviction allegation. (Lodgment No. 2, Reporter's Tr., Apr. 17, at 3-5.) Petitioner personally entered a not guilty plea to the amended complaint at that hearing, while represented by appointed counsel. (Id.)

1  The due process aspect of Claim 1 was presented to the state supreme, appellate and
2  superior courts in habeas petitions, alleging, as here, that Petitioner's state and federal due
3  process rights were violated because he was denied his statutory right to enter a guilty plea at his
4  first arraignment, a time when he was exposed to lesser punishment than after the complaint was
5  amended. (Lodgment No. 15 at 5-14; Lodgment No. 13 at 11-19; Lodgment No. 11 at 11-19.)
6  Petitioner relied in state court, as here, on a footnote from North Carolina v. Alford, 400 U.S.
7  25 (1970) (holding that a defendant may maintain innocence while entering a guilty plea in order
8  to avoid a harsher sentence, if the plea is intelligently and voluntarily entered), which states:

> Our holding does not mean that a trial judge must accept every constitutionally valid plea merely because a defendant wishes so to plead. A criminal defendant does not have an absolute right under the Constitution to have his guilty plea accepted by the court, although the States may by statute or otherwise confer such right.

Alford, 400 U.S. at 38 n.11 (citation omitted).

Petitioner argues here, as he did in the state court, that California Penal Code sections 895a(a), 988, 1009, 1016 and 1018, individually and in tandem, confer a right to have his guilty plea accepted at the first arraignment. See People v. Clemons, 160 Cal.App.4th 1243, 1251 (2008) (recognizing that "[u]nless otherwise provided by law, every plea shall be entered or withdrawn by the defendant himself or herself in open court" . . . and "a defendant has a personal right to enter the plea he or she wants, even if counsel believes that plea is a bad tactical choice."), citing and quoting Cal. Penal Code § 1018. He contends these statutes create a federally-protected liberty interest in having his guilty plea accepted at his first arraignment. See e.g. Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (recognizing that a federally-protected liberty interest "may arise from an expectation or interest created by state laws or policies.").

The state supreme court denied habeas relief without citation or statement of reasoning. (Lodgment No. 16.) The state appellate court denied habeas relief on the basis that the claim was barred because it should have been raised on direct appeal rather than on habeas, as well as because Petitioner had not shown a prima facie case for relief, and adopted as its own the superior court order denying relief. (Lodgment No. 14.) The superior court found that the claim was barred because it should have been raised on direct appeal, and then denied the claim on its

merits, although the due process aspect of Claim 1 was not specifically addressed.[2] (Lodgment No. 12.)

As there is no reasoned state court opinion on the due process aspect of Claim 1, the Court must conduct an independent review of the record in order to determine whether the state supreme court's summary denial involved an unreasonable application of clearly established federal law. Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002) (holding that when the state court reaches the merits of a claim but provides no reasoning to support its conclusion, "although we independently review the record, we still defer to the state court's ultimate decision."); Greene v. Lambert, 288 F.3d 1081, 1089 (9th Cir. 2002) ("[W]hile we are not required to defer to a state court's decision when that court gives us nothing to defer to, we must still focus primarily on Supreme Court cases in deciding whether the state court's resolution of the case constituted an unreasonable application of clearly established federal law."); see also Johnson v. Williams, 568 U.S. ___, 133 S.Ct. 1088, 1096 (2013) ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits-but that presumption can in some limited circumstances be rebutted.")

When conducting an independent review of a silent denial of a claim by the California Supreme Court, a federal habeas petitioner "can satisfy the 'unreasonable application' prong of § 2254(d)(1) only by showing that 'there was no reasonable basis' for the California Supreme Court's decision." Cullen v. Pinholster, 563 U.S. ___, 131 S.Ct. 1388, 1402 (2011), quoting Harrington v. Richter, 562 U.S. ___, 131 S.Ct. 770, 784 (2011). "Under § 2254(d), a habeas court must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Richter, 131 S.Ct. at 786; Pinholster, 131 S.Ct. at 1402 ("Section 2254(d) applies even where there has been a summary denial."), citing Richter, 131 S.Ct. at 786.

---

[2] Respondent has waived any procedural default defense by failing to present one in the Answer. Morrison v. Mahoney, 399 F.3d 1042, 1046 (9th Cir. 2005). The Court declines to exercise its discretion to raise procedural default sua sponte. Boyd v. Thompson, 147 F.3d 1124, 1127 (9th Cir. 1998).

"[Federal due process analysis] proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." Swarthout v. Cooke, 562 U.S. ___, 131 S.Ct. 859, 861 (2011). When "a State creates a liberty interest, the Due Process Clause requires fair procedures for its vindication - and federal courts will review the application of those constitutionally required procedures." Id. at 862. The Supreme Court has also recognized there are extreme cases where state procedures can give rise to a federal due process violation, such as where state court actions are "so arbitrary or capricious as to constitute an independent due process . . . violation." Lewis v. Jeffers, 497 U.S. 764, 780 (1990).

Based on a de novo review, the Court declines to adopt the Magistrate Judge's finding that the due process aspect of Claim 1 does not present a federal claim, a finding to which Petitioner has objected. (R&R at 13-14; Obj. at 4-16.) The Court finds, however, that federal habeas relief is not available because the state supreme court's silent denial of the claim did not involve an objectively unreasonable application of clearly established federal law.

Assuming, *arguendo*, that Petitioner could establish a federally-protected liberty interest created by the California Penal Code, the state court here could have reasonably determined that even if Petitioner had a statutory right to enter a guilty plea at his arraignment prior to the appointment of counsel, he waived that right because he ended the arraignment without objecting to the entry of a not guilty plea on his behalf. This is bolstered by the fact that he was invited to address the court after speaking off the record during the hearing to an unappointed deputy public defender, and further bolstered by the fact that Petitioner had the opportunity at the second arraignment to again object to the entry of a not guilty plea, but did not, and instead personally entered a not guilty plea to the amended complaint after he had been appointed counsel. Thus, the state court may have reasonably found Petitioner waived any statutory right to enter a plea or to object to the amendment of the complaint. The state court could also have reasonably found that federal due process was satisfied by the procedures used in this case, in that Petitioner was given the opportunity to object but remained silent, and such procedures were therefore sufficient to secure any liberty interest Petitioner may have had to enter a guilty plea

1 or object to the amendment of the complaint. See Wolff v. McDonnell, 418 U.S. 539, 557 (1974) (holding that when a state creates a liberty interest the holder of the interest is entitled "to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated."); Gagnon v. Scarpelli, 411 U.S. 778, 790 (1973) (recognizing that "fundamental fairness" is "the touchstone of due process" in criminal procedures related to appointment of counsel). The state court's denial of the due process aspect of Claim 1 did not involve an objectively unreasonable application of clearly established federal law, and habeas relief is unavailable. Richter, 131 S.Ct. at 786.

The next aspect of Claim 1, alleging ineffective assistance of counsel, was denied by the state superior court in the last reasoned state court opinion:

> Here, Petitioner claims he would have been sentenced to less time had he pled guilty at arraignment, as the complaint prior to amendment did not allege the prior serious felony, and additional counts of Penal Code section 211 (robbery). However, what Petitioner fails to acknowledge is that if a defendant pleads guilty to a felony complaint that does not allege all priors, the complaint can be amended because priors generally do not have to be alleged or proved at the preliminary examination, only in the indictment or information. (Pen. Code, § 969.5; *People v. Shaw* (1986) 182 Cal.App.3d 682.) Therefore, Petitioner has made no showing that he was prejudiced by his arraignment counsel because even if he pled guilty at arraignment, the prosecution retained the ability to amend the complaint to allege his serious felony prior.

(Lodgment No. 12, In re Harper, No. HC 20156, Order at 3 (Cal.Sup.Ct. Nov. 8, 2010).)

For ineffective assistance of counsel to provide a basis for habeas relief, Petitioner must first show that counsel's performance was deficient. Strickland v. Washington, 466 U.S. 668, 687 (1984). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. He must also show counsel's deficient performance prejudiced the defense. Id. This requires a showing that "counsel's errors were so serious as to deprive [Petitioner] of a fair trial, a trial whose result is reliable." Id. To satisfy the prejudice prong, Petitioner need only demonstrate a reasonable probability that the result of the proceeding would have been different absent the error, which is "a probability sufficient to undermine confidence in the outcome." Id. at 694.

Petitioner has not shown a reasonable probability of a different outcome if the deputy public defender had advocated for a guilty plea to be entered. As quoted above, the judge

1  refused to enter a guilty plea at the first arraignment, apparently because Petitioner had not yet
2  been appointed counsel. The complaint could have been amended after his plea, and there is no
3  indication in the record that Petitioner still wished to enter a guilty plea at the end of that hearing,
4  or before he was arraigned on the amended complaint. Thus, he was not prejudiced by his
5  arraignment counsel's failure to insist on the entry of a guilty plea, or by counsel's request that
6  a not guilty plea be entered on Petitioner's behalf. Strickland, 466 U.S. at 694.
7         The Court would reach the same conclusion if this aspect of Claim 1 was properly
8  considered under the Due Process Clause rather than Strickland since counsel had not been
9  appointed at the first arraignment. "California has fulfilled its responsibility [under the Sixth and
10 Fourteenth Amendments] to provide counsel for indigents largely by establishing public
11 defender's offices." In re Williams, 1 Cal.3d 168, 174-74 (1969) ("[T]he attorney's role in
12 investigating the facts and researching the applicable law prior to advising the petitioner to plead
13 becomes particularly important because of the serious consequences of a guilty plea. 'A plea of
14 guilty is more than a confession which admits that the accused did various acts; it is itself a
15 conviction; nothing more remains but to give judgment and determine punishment.'"), quoting
16 Boykin v. Alabama, 395 U.S. 238, 242 (1969). For the reasons set forth above, the procedures
17 used here adequately protected any federal due process right Petitioner had to enter a plea of his
18 choice without interference from unappointed counsel. With this modification, the Court adopts
19 the Magistrate Judge's finding and conclusion that federal habeas relief is unavailable because
20 the state court adjudication did not involve an objectively unreasonable application of clearly
21 established federal law. (See R&R at 16.)
22 **2.    Claim 2**
23        Petitioner alleges in Claim 2 that he received ineffective assistance of appellate counsel
24 in violation of the Sixth and Fourteenth Amendments when counsel refused Petitioner's written
25 request to raise a number of issues on appeal. (Mem. P&A Supp. Pet. at 21-24.) Based on a de
26 novo review, the Court adopts the Magistrate Judge's findings and conclusions regarding this
27 claim and denies habeas relief for the reasons set forth in the R&R, overruling Petitioner's
28 objections. (See R&R at 16-17; Obj. at 16-20.)

### 3. Claim 3

Petitioner alleges in Claim 3 that his right to due process under the Sixth and Fourteenth Amendments was violated when the trial court denied a defense motion to disqualify the trial judge. (Mem. P&A Supp. Pet. at 24-27.) The Magistrate Judge found that Petitioner had failed to state a federal claim, and the R&R did not apply 28 U.S.C. § 2254(d) to the state court adjudication of this claim. (R&R at 17-19.) Petitioner objects to the finding that the claim does not present a federal question. (Obj. at 20-24.) Because Claim 3 presents a federal claim, the Court declines to adopt the Magistrate Judge's finding, and will consider the claim in the first instance.

Before trial began, Judge Cynthia Bashant, the trial judge, stated:

> In the interest of full disclosure, I should disclose I was in the U.S. Attorney's office in 1997 when I understand Mr. Harper was prosecuted by the U.S. Attorney's office. I was the chief of the border crimes unit in 1997 and the deputy chief of narcotics. I had nothing to do with Mr. Harper's prosecution in any way. I don't recognize the name. I don't recognize the background. I don't think it would affect my ability to be fair, but I do think in the interest of full disclosure I should tell you I was in the U.S. Attorney's office at that point in time.

(Lodgment No. 4, Reporter's Tr., Sept. 17, 2007, at 19.)

Petitioner, who was representing himself at that time, did not request the judge recuse herself at that hearing, which focused primarily on ensuring that Petitioner had adequate access to the law library and an investigator. (Id. at 19-31.) At a hearing held the next day, Tuesday, the trial judge indicated that trial would begin on the following Monday. (Lodgment No. 4, Reporter's Tr., Sept. 18, 2007, at 32-34.) Petitioner, who had elected to proceed pro se on September 12, 2007, indicated he was not prepared to go to trial. (Id. at 34-40.) The trial judge denied his motion for continuance, and gave him the choice of continuing to proceed pro se or having private conflict counsel reappointed. (Id.) Petitioner responded to that ruling by stating: "In light of this event I would exercise my peremptory challenge under [California Code of Civil Procedure section] 170.6 to have a different judge appointed in this case." (Id. at 40.) The trial judge denied the request on the basis that it was untimely, in that she had already ruled on material issues in the case, and on the alternative basis that seeking recusal based on an adverse ruling was not permissible. (Id. at 40-41.)

Petitioner alleged in his state supreme court habeas petition that the trial judge should have granted his recusal motion because "the trial court judge had personal knowledge of what occurred in the U.S. District Court, and petitioner was being tried for the exact same offense, she could not free herself from said influence." (Lodgment No. 15 at 33.) The claim was supported by a handwritten peremptory challenge submitted under penalty of perjury containing that same argument, signed by Petitioner and dated September 17, 2007, but file-stamped January 23, 2008. (Lodgment No. 15, Ex. Q.) Petitioner provided the state court with his affidavit stating that he had submitted the peremptory challenge to the clerk of court on September 17, 2007, but it was not file-stamped until after trial, along with most or all the other motion papers he had submitted during trial. (Id.)

The last reasoned decision by the state court with respect to this claim is the superior court order denying habeas relief, which stated:

> Petitioner argues his Sixth Amendment right to a fair trial and his Fourteenth Amendment right to due process were violated when the trial court denied his motion to disqualify the trial judge. Defense counsel may move to disqualify a judge from hearing any matter under Code of Civil procedure section 170.6. However, the defendant must make a declaration under penalty of perjury that he believes prejudice exists. (Code Civ. Proc. § 170.6(a)(2); *People v. Rodgers* (1975) 47 Cal.App.3d 992.)
>
> In Petitioner's case, before his original trial, Petitioner moved for a peremptory challenge to disqualify the trial judge, but did not file a declaration stating he believed the judge was prejudiced under penalty of perjury. In fact, Petitioner admitted he thought he could file peremptory challenges without any reasoning whatsoever. (Exhibit O, Reporter's Transcript, page 40-41.) Therefore, the denial of his motion to disqualify the trial judge was valid.

(Lodgment No. 12, In re Harper, No. HC 20156, Order at 3-4.)

To the extent the record supports a finding that Petitioner timely submitted a written peremptory challenge as required by statute, the state court wrongly determined that Petitioner had provided no reasoning for his request. Even to the extent the state court was referring to Petitioner's failure to state reasons on the record for the request at the time it was made, Petitioner indicated in the passage cited by the superior court above that he "would exercise my peremptory challenge," arguably a reference to the written challenge. (Lodgment No. 4, Reporter's Tr., Sept. 18, 2007, at 40) (emphasis added). The Court need not develop the record

with respect to this claim because, assuming the state court adjudication of this claim involved an unreasonable determination of the facts within the meaning of 28 U.S.C. § 2254(d)(2), or assuming Petitioner could otherwise satisfy the conditions of 28 U.S.C. § 2254(d)(1), he is only entitled to federal habeas relief if he can also establish that his federal constitutional rights were violated by the trial judge's refusal to recuse herself. See Fry v. Pliler, 551 U.S. 112, 119-22 (2007) (holding that a federal habeas petitioner must show a constitutional violation even if § 2254(d) has been satisfied); Frantz v. Hazey, 533 F.3d 724, 735-36 (9th Cir. 2008) (en banc) (same). For the following reasons, Petitioner has not made such a showing.

"[W]hen a defendant's right to have his case tried by an impartial judge is compromised, there is structural error that requires automatic reversal." Greenway v. Schriro, 653 F.3d 790, 805 (9th Cir. 2011), citing Tumey v. Ohio, 273 U.S. 510, 535 (1927). The Supreme Court has recognized that "the right to an impartial judge [is] among those 'constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error.'" Greenway, 653 F.3d at 805, quoting Chapman v. California, 386 U.S. 18, 23 (1967).

"A showing of judicial bias requires facts sufficient to create actual impropriety or an appearance of impropriety." Greenway, 653 F.3d at 806. These include "circumstances 'in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.'" Caperton v. A.T. Massey Coal Co., Inc., 556 U.S. 868, 877 (2009), quoting Withrow v. Larkin, 421 U.S. 35, 47 (1975). Here, the trial judge disclosed that she had worked as a prosecutor in the United States Attorney's office at the same time Petitioner was prosecuted by that office, but in a different division, and stated that she had no knowledge of Petitioner's case. "The supreme court has recognized only a few circumstances in which an appearance of bias necessitates recusal to ensure due process of law," including where the trial judge had a pecuniary interest, Tuney, 273 U.S. 523, where the judge acted as both the grand jury and the trier of fact, In re Murchinson, 349 U.S. 133, 137 (1955), where the defendant had rudely insulted the same judge who then presided over contempt proceedings, Mayberry v. Pennsylvania, 400 U.S. 455, 465-66 (1971), and where a party was a large donor to the judge's election campaign, Caperton, 556 U.S. at 872. Greenway, 653 F.3d

at 806-07. Petitioner has not alleged facts which support a finding that his trial judge had an appearance of bias, or actual bias, necessitating recusal. The Court denies habeas relief with respect to Claim 3 on the basis that, assuming Petitioner could satisfy 28 U.S.C. § 2254(d), he has not demonstrated that his federal constitutional rights were violated by his trial judge's refusal to recuse herself.

**4.     Claim 4**

Petitioner alleges in Claim 4 that he was denied his Sixth Amendment right to compel the attendance of witnesses at his trial, and his Fourteenth Amendment right to due process, when the prosecution and FBI dissuaded witnesses from appearing. (Mem. P&A Supp. Pet. at 28-30.) Based on a de novo review, the Court adopts the findings and conclusions of the Magistrate Judge with respect to this claim over Petitioner's objections. (R&R at 19-20; Obj. at 25-27.)

**5.     Claim 5**

Petitioner alleges in Claim 5 that the use of his federal conviction to enhance his state sentence violated his rights under the Sixth and Fourteenth Amendments. (Mem. P&A Supp. Pet. at 31-33.) Based on a de novo review, the Court adopts the findings and conclusions of the Magistrate Judge with respect to this claim over Petitioner's objections. (R&R at 20-21; Obj. at 27-29.).

**6.     Claim 6**

Petitioner contends in his final claim that his federal constitutional rights were violated in relation to his Marsden[3] motion. (Mem. P&A Supp. Pet. at 33-34.) The Court declines to adopt the finding by the Magistrate Judge that Claim 6 is unexhausted. (R&R at 22.) The claim was presented to the state supreme court in the petition for review on direct appeal. (Lodgment No. 9.) The brief raising the claim specifically cited to California decisional law which provides that the California Supreme Court's analysis of Marsden claims such as the one presented is inextricably intertwined with federal constitutional considerations. (Lodgment No. 9 at 6, citing,

---

[3] People v. Marsden, 2 Cal.3d 118, 123 (1970) (holding that a defendant represented by appointed counsel or the public defender may request that the court discharge the attorney and substitute new counsel if the defendant's right to counsel would be substantially impaired by continuing with the original attorney).

*inter alia*, People v. Ortiz, 51 Cal.3d 975, 988 (1990) (holding that "[t]he right to counsel of choice is one of the constitutional rights most basic to a fair trial."), citing Chapman v. California, 386 U.S. at 23, Faretta v. California, 422 U.S. 806 (1975) and Gideon v. Wainwright, 372 U.S. 335 (1963).) Such a citation adequately alerted the state supreme court to the federal nature of the claim, thereby exhausting state court remedies. Peterson v. Lampert, 319 F.3d 1153, 1158 (9th Cir. 2003) ("A central tenet of our federal system is that state and federal courts are jointly responsible for the enforcement of federal constitutional guarantees. . . . To hold that citation to a state case analyzing a federal constitutional issue is insufficient to alert a state court to the federal nature of a petitioner's claim, when citation of a comparable federal case would be sufficient for that purpose, would be to conclude that the state courts are not genuine partners in the enforcement of federal constitutional law.")

Because the federal aspect of Claim 6 was properly presented to the state supreme court, 28 U.S.C. § 2254(d) must be applied to the last reasoned decision, which was correctly identified in the R&R as the appellate court opinion. Based on a de novo review, and over Petitioner's objections, the Court adopts the findings and conclusions of the Magistrate Judge that the state court adjudication of the Marsden claim did not involve an objectively unreasonable application of clearly established federal law. (R&R at 22-25.) Habeas relief is denied as to Claim 6.

### 7. Conclusion and Order

The Court **ADOPTS IN PART, ADOPTS AS MODIFIED IN PART**, and **DECLINES TO ADOPT IN PART** the findings and conclusions of the Magistrate Judge as set forth above. The Petition for a Writ of Habeas Corpus is **DENIED**. The Court **DECLINES** to issue a Certificate of Appealability.

The Clerk shall enter judgment denying the Petition and denying a Certificate of Appealability.

**IT IS SO ORDERED.**

DATED: October 15, 2013

*/s/ Barry Ted Moskowitz*

**BARRY TED MOSKOWITZ**
United States District Judge